## No. 11,364.

### ANTONIO AUGUSTI VS. CITIZENS BANK OF LOUISIANA.

No sales, whether judicial, forced or voluntary, of property mortgaged to the Citizens Bank can affect its rights secured by the 24th section of its charter.

But as to taxes, it must be presumed that the Legislature did not intend to deprive the State of any prerogative, right or property, unless in terms expressive or inference irresistible.

The property of the mortgage stockholders was always subject to taxation, and the remedy to compel payment remains unimpaired by the charter.

34

46   529
47   799

46   529
49  1475

46   529
51   809
51   978

46   529
52  1158
52  2048

46   529
d104  715

46   529
109   650

46   529
f120   244

46   529
117   735

The law does not contemplate that the assessor shall test titles in order to make·
assessment of the property.

A *prima facie* title suffered to remain unquestioned on the official records, taken in
good faith as a basis for the assessment, is a compliance with the requisition of
the statute regarding assessments.

APPEAL from the Civil District Court for the Parish of Orleans.
Théard, J.

*Farrar, Jonas & Kruttschnitt* Attorneys for Plaintiff and Appellee:

Any person who pays the taxes levied on an assessment in a given name
is estopped from afterward alleging that such assessment is in-
valid. Read vs. Creditors, 39 An. 125; Factors and Traders In-
surance Company vs. Levi, 42 An. 435.

Under Art. 329 of the Code of Practice replications are prohibited in
Louisiana and therefore all allegations in the answer are open to
every objection of law and of fact, such as nonage, coverture,
fraud, prescription and the like, as if specially pleaded. If the
defendant be surprised the proper remedy is a continuance or a
new trial. Planters' Bank vs. Allard, 8 New Series, 141; Hen-
nen's Digest, p. 1155.

A tax deed, even though made pursuant to a sale under a void as-
sessment, is nevertheless *prima facie* valid, and an assessment
in the name of a purchaser under that deed, or of any one hold-
ing under him, and in whose name the property stands on the
conveyance records, is a valid assessment and vests a perfect
title in one purchasing under it. State *ex rel.* Maspereau vs.
Batt, 40 An. 582; Palmer vs. Board of Assessors, 42 An. 1127;
Prescott vs. Payne, 44 An. 655, 656.

The provision in the charter of the Citizens Bank of Louisiana, that
the property mortgaged to said bank may be seized and sold at
any time, in whosesoever hands or possession the same may be
found, notwithstanding any alienation thereof, or change of pos-
session by succession or descent to heirs or legatees, by last will
and testament, or otherwise, in the same manner as if the same
were in the possession of the original mortgagor, is nothing
more than a statutory *pact de non alienando*, and does not
affect the rights of creditors holding a privilege on the property,
and especially the right of the State to recover her taxes out of
the same.

The charter of the bank does not affect the rights of the State to collect her taxes on the property mortgaged to the bank, for the additional reason that the sovereign is never included in general words of a statute. Endlich on Interpretation of Statutes, Sec. 161; Sutherland on Statutory Construction, Sec. 133.

*Henry Denis* Attorney for Defendant and Appellant:

The assessment in the name of one only, of two joint proprietors, when the property is held in indivision, and is recorded in the several names of the joint proprietors in the office of conveyances, is null and void *in toto*. The tax sale made under such assessment is absolutely null. Norris *et al.* vs. Hays *et al.*, 44 An. 912; Kearne vs. Collins, 40 An. 209.

When the tax sale is an absolute nullity, the adjudicatee acquires no title and can not transfer any; and, therefore, at a subsequent tax sale, the second adjudicatee, having to trace his title through the first, acquires no right either. Gibson vs. Hitchcock *et al.*, 37 An. 209.

Estoppel must be specially pleaded. Heirs of Wood vs. Nicholls, 33 An. 728.

Under the charter of the Citizens Bank of Louisiana, a tax sale of property mortgaged to the bank, and securing the bonds of the State, can not affect the mortgage, any more than any other forced sale. The purchaser takes the property *cum onere*. Charter, Sec. 24; Bertoli vs. Citizens Bank, 1 An. 120; Citizens Bank vs. Buisson, 7 Rob. 507; 17 La. 387; 11 Rob. 209; 2 An. 526, 606; 28 An. 771.

All the provisions of the charter of the Citizens Bank enter into the contract between the State and the bondholders, as fully as if specifically stipulated in a notarial act. Louisiana vs. Pilsbury, 15 Otto, 288.

The opinion of the court was delivered by

BREAUX, J. The record discloses that on the 16th day of July, 1836, Honoré and Alexander Coulon mortgaged the lot and improvements thereon, claimed in this suit, to the Citizens Bank to secure the payment of stock debt of seven thousand dollars.

This mortgage was foreclosed in 1890 and the property was adjudicated to the defendant.

The plaintiff was the adjudicatee of the property at tax collector's sales for State taxes of 1887. The assessment was made in the name of Joaquin Sambola.

The latter acquired the property by authentic deed, duly recorded, in May 1885, from J. B. Henry, Jr.

Henry became the owner at tax sale made for taxes of the year 1883 under an assessment in the name of the estate of Alexander ·Coulon. The property was assessed for the taxes for years 1870 to 1885 in the name of the estate of Alexander Coulon, for the years 1886, 1887 and 1888 in the name of J. J. Sambola, and for years subsequent in the name of plaintiff, Augusti.

The State taxes for the years 1871, 1872, 1874 and 1875 were paid by the defendant, the Citizens Bank.

The testimony shows that there is a large amount unpaid of bonds issued under the law of 1836, amendatory of the charter of the bank. These bonds it is urged by defendant have such a guarantee from the State that the State can not in consequence lessen the security by selling for taxes property mortgaged for their security. The plaintiff alleges that the Citizens Bank has slandered and continues to slander his title and disturb him in the enjoyment of his ownership of the property.

The prayer of his petition is for an injunction restraining the bank from interfering with the petitioner or his tenants and from asserting that it is the owner of the property, and that plaintiff be quieted in the enjoyment of his possession.

In the answer the defendant pleads a general denial and specifically sets forth that plaintiff has no title to the property; that the property was not assessed in the name of the owners in 1883.

That the tax sale of 1885 was an absolute nullity—the adjudicatee, Henry, acquired no title and could not transfer any; that in consequence the second adjudicatee having to trace his title to the first acquired no title, as the true owner had never been divested.

In the alternative, the defendant's argument through counsel is that, if the tax sale be valid, it would not under the provisions of the charter of the Citizens Bank affect her mortgage upon the property for the reason that all mortgages executed for stock or loans may be closed at any time in whosesoever hands or possession the property

mortgage may be, notwithstanding any alienation or change of possession. See Sec. 24 of Citizens Bank, Act of 1833.

The first question which presents itself for our determination is, if the sale is not void, what effect must be given to the non-alienation clauses of the bank's charter?

The second question is, is the tax title to the property based upon the tax sale for the taxes of 1887 a valid title?

This court has expressed its recognition of the binding force of the section of the Citizens Bank's charter cited, and stated with some emphasis that no sale, whether judicial, forced or voluntary, of property mortgaged to the Citizens Bank, can in any manner affect the rights secured to that institution by the 24th section of its charter; that the Legislature intended no exception and made none. Bertoli vs. Citizens Bank, 1 An. 120.

In the different cases to which our attention is directed the interests were private and the suits related to the disposition of the property sought by persons seeking to realize rights which they had acquired subsequently to the bank's mortgage.

In those cases the rights involved were passed upon as if the property was in the possession of the original mortagor.

The question at issue in the case at bar is different.

The Constitution ordains that all property shall be taxed in proportion to its value.

While this provision does not extend to or include public property of the general government, of the State, or any of its subordinate subdivisions, or property specially exempted, it extends to and includes all property in commerce.

The State is not the owner of the property taxed.

The property of the mortgage stockholders was always subject to taxation and the remedy to compel payment remained unimpaired by the charter.

The taxes attach primarily to the lands and remain until satisfied by payment or from the proceeds of the sale for their payment.

Nothing in the charter prevents a tax sale of the property of a mortgage shareholder.

There exists a presumption against the legislative intent to affect government.

Unless sovereignty is expressly embraced by the terms of the

statute, it does not come within the terms of law regulating rights among persons.

The rights of the State to collect her taxes should not be treated as relinquished or conveyed away by inference.

The liability of the original stockholder to pay his taxes does not become ineffective from the moment the bank proceeds to foreclose its mortgage.

This exceptional right, in opposition to the State, can not be created by legal construction.

"It is presumed that the Legislature does not intend to deprive the crown of any prerogative, right or property, unless it expresses its intention to do so in explicit terms or makes the inference irresistible." Endlich on the Interpretation of Statutes, p. 223.

There is no direct expression in the statute upon the subject and there is nothing in its terms which makes the inference irresistible.

*The tax sale.* The validity of the tax sale involved in the case at bar, must be determined irrespective of the charter.

It is made the duty of an assessor, by statute, to examine the records of the conveyance office to ascertain what taxable property there is in his district or parish.

The record of deeds of conveyance and of mortgage are taken as the basis of the assessment.

It does not devolve upon him to test the validity of these acts in order that he may ascertain in whose name to assess the property.

If an act be not radically null upon its face, he is within the law in taking as correct a recorded deed interested parties have for years permitted to remain on the record as an adverse title, unquestioned and unassailed.

There was a notarial deed of record dating from 1885.

It devolved upon the owner annually to make a return of the property, a required formality uncomplied with.

He knew that the property had not been assessed in his name.

The notarial record in the conveyance office was a notice that title was recorded in the name of the person to whom it was assessed; the owner has no legal cause of complaint of the sale of the property for the taxes.

Two years prior to the registry of the notarial act of sale to Sambola, in whose name it was assessed when the last adjudication, that

·of 1887, was made for taxes, the property was adjudicated to Henry, who was Sambola's author.

The objection is directed against this tax sale, *i. e.* the tax sale to Henry in 1883, null, it is urged, because assessed in the name of the estate of Alex. Coulon, it being at the time the property of the estate of Honorè and Alexander Coulon.

Defendant's counsel forcibly argues in support of the proposition that the defect in the tax sale of 1885 is fundamental and not curable by monition.

Be that as it may it does not follow that the tax sale of 1888, pleaded in the case at bar, is also null.

The deed itself is *prima facie* evidence of a compliance with the requisition of the law.

The deed was evidence of title.

When the party claiming adversely shows that a prerequisite to the validity of the title has not been complied with, the *prima facie* is destroyed, the presumption defeated and the deed becomes entirely useless as a title.

The defendant, a mortgage creditor, having a direct interest, possibly more valuable than that of the owners themselves, suffered the *prima facie* evidence to remain unquestioned. ·

The property passed into other hands under this title.

The ministerial officers performed every duty imposed by law. The assessment was made by reference to the deed of record, and every other condition essential to the character of the deed was complied with.  It therefore became conclusive evidence of title.

The tax deed generally is an original title, not derivative, and can not be defeated by a missing link in the chain of title.

Titles that are intrinsically null, if permitted to remain unquestioned, may become the basis of an assessment that will result in a valid sale.

Any other ruling upon this point would compel the assessors to investigate titles and ascertain as to their conclusive ;validity.   This was never contemplated by the law.   The evidence of a *prima facie* title is the requirement.

Such evidence was of record when the assessment was made of the property sold at tax sale in 1888.

The judgment appealed from is therefore affirmed at appellants' costs.

Mr. Justice Miller recused.