NICHOLLS, J.
This is the second time that the parties to this suit have been before this court. The first case will be found reported in 111 La. 601, 35 South. 780. The facts and issues involved in this litigation will be found by referring to that volume of the reports. It resulted in a judgment of nonsuit against the plaintiff, and under the reservation of that judgment it has renewed the litigation. The district court rendered judgment in favor of the plaintiff, and defendants have appealed.
There appears in the record a copy of a procSs verbal, signed by P. L. Bouny, state tax collector of lower district of New Orleans, dated July 28, 1884, of tax sales made by him under Act No. 77, p. 88, of 1880, for the taxes of 1880. This procSs verbal refers for most of the facts connected with the sale of the different properties sold to “a detailed statement or schedule which it declared accompanied the procSs verbal.” There appears in the transcript, just below the procSs verbal, a paper divided into columns, under the heading: “Name. Ward. No. of Square. No. of Lots. Measurement. Assessment. Tax. Interest. Collector’s Commission. Auctioneer’s fees. Notice and Preparing Advertisement. Deed and Conveyance. Total. Date of Adjudication. Date of Redemption,” etc. This statement is certified of February 1, 1905, by the deputy recorder of conveyances, as being “a true and correct copy of the inscription made in this office on-, 18 — , in Book 125, folio 58-59, 117, and 118.”
There is nothing identifying this paper with the procés verbal. In this particular paper, under the heading, “Name,” is written “Patrick Irwin,” and under the heading, “Date of Adjudication,” are written the words, “July 8, 1884.” The properties referred to in the paper as being in the Ninth Ward and as being in different squares, which are described.
The procés verbal declares that the properties described in the schedule or statement were adjudicated to the state of Louisiana for the taxes of 1880, as the last and highest bidder. Assuming that the paper certified to is the statement or schedule referred to in the procSs verbal, it shows that the taxes on these properties were assessed in the name of Patrick Irwin, and the various notices, therefore, must have been sent to him. He was not at that time the owner of those properties. The state did not attempt to take possession under this adjudication made to it.
We find in the transcript the copies of two tax deeds made and executed by Charles Cavenae, state tax collector, to the state of Louisiana. The sales are declared in each deed to have been made in enforcement of the taxes of 1884, under Act No. 96, p. 119, of 18S2. The first deed is of sales made on the 28th of -, 1885. The second deed of sales was made on the 29th of September, 1885. In both of the deeds the properties *239 sold are 'declared to have been adjudicated to the state of Louisiana for taxes of 1884. In the copy of the deed of the sales of the 28th of September, 1888, the properties are described.
This deed appears to have been recorded in the book of conveyances for the parish of Orleans on April 8, 1886.
In the deed of sales of September 29, 1885, the properties sold are all declared to have been assessed and sold in the name of Daniel Yaughn, and were described therein.
The deed declared that the properties were adjudicated to the state with the right to be put into actual possession thereof by order of any court of competent jurisdiction. This deed was recorded in the office of the recorder of conveyances on April 8, 1886.
The tax research certificate of the state tax collector,, offered in evidence by the defendant, shows that the taxes of 1882 and 1883, assessed in the name of Daniel Yaughn, were paid on February 6, 1885, but by whom does not appear.
The state made no attempt to be placed in actual possession of the property under this adjudication, but continued to assess the properties in the name of Daniel Vaughn. It is not disputed by the bank that the properties adjudicated to the state, under the adjudication made by Charles Cavenac, belonged to Daniel Vaughn at the time of their assessment and at the time of those adjudications.
Notwithstanding these adjudications, the properties continued to be assessed for taxes by the assessor as the property of Vaughn, and that fact was placed of record in the recorder’s office and the office of the tax collector. The evidence shows that the bank held a special mortgage on those properties antedating the adjudications made by either Bouny, tax collector, or by Cavenac. In October, 1890, it proceeded against the properties specially mortgaged by executory process, as alleged in its petition, and under those proceedings they were adjudicated to it. The sheriff, however, refused to make the bank on the deed, on the ground that he could not do so, as he had not been furnished with a certificate that all the taxes on the property had been paid. In this situation the bank obtained from the court a rule on the state tax collector, the city of New Orleans, and the recorder of mortgages to show cause why the inscriptions of such taxes, tax privileges, and tax mortgages on the properties on the records should not be canceled and erased; it suggesting and pleading that they were prescribed under certain statutes specified. The defendants in the rule were notified, but the court made the rule absolute, and ordered the inscriptions to be canceled and erased. The defendants showed no cause why this should not be done, and the tax collector subsequently entered upon his records that such taxes had been canceled and erased by judgment of court.
The judgment on the rule was rendered on the 16th day of November, 1891.
On the 29th of April, 1898, the State Auditor executed to W. W. Wall an act of sale of the properties included in the two tax deeds of Charles Cavenac, of the 28th and 29th of September, 1885. In this act he declared that he acted in pursuance of section 3, Act No. 80, p. 89, of 1888, and Act No. 126, p. 181, of 1896. In this deed, after giving a description of each of the different pieces of land transferred, he stated that it had been adjudicated to the state in 1883 in the name of Patrick Irwin or the estate of Patrick Irwin, for the taxes of 1880 or 1881, and in 1885 in the name of Daniel Vaughn for the taxes of 1884. The deed recited that the property was delivered to the purchaser. This act was recorded in the conveyance office of the parish of Orleans on July 13, 1898.
On February 2S, 1900, Wall transferred the same properties to Robert H. Marr. The *241 vendor conveyed, the property will full sub-rogation to all rights of possession to which he was entitled. This act was recorded in the Book of Conveyances of the Parish of Orleans on March 3, 1900.
Neither Yaughn nor the bank'had paid taxes on the property later than 1883. On May 13, 1898, W. W. Wall filed a petition in the civil district court, in which he described the properties which had been transferred to him by the State Auditor. He alleged that the same had been conveyed to him by that officer under Act No. 80, p. 88, of 1888, and Act 126, p. 181, of 1896; that, pursuant to the provisions of said acts of the General Assembly, he desired to be sent into possession of said property by a writ of possession and seizure. He accordingly prayed that such a writ issue, directed to. the sheriff, commanding him to seize the said property, and place him in the actual possession of said property according to law, and more particularly in accordance with section 5, Act No. SO, p. 90, of 1888. Under an order of the court to that effect a writ issued to the sheriff as prayed for. The property was at that time under seizure by the sheriff in the suit of the bank against Yaughn. Ignoring that fact the sheriff returned the writ to the court declaring that after serving due notice to defendant and occupants, he had placed plaintiffs in full possession of the property, as would appear by receipt of the plaintiff of date of July 3, 1898.
Wall, as a fact, took possession of the property, and inclosed it by a fence, and built a house upon it. Marr after his purchase, built several houses upon it, which he has rented out. In his reasons for judgment in this case the district judge said:
“My conclusions on the prescription pleaded are that the constitutional prescription of three years has no application in support of the Auditor’s deed of April 27, 1898.
“The taxes of 1880 to 18S8, the collection or enforcement of which was the sole authority for the adjudications to the state, and the only authority for the Auditor to sell the property to Mi\ Wall, were canceled and extinguished by judgment against the state November 16, 1891, nearly seven years before the adoption of the Constitution of 1898. The judgment of November 16, 1891, against the state, not only destroyed the right of the state to collect said taxes, but it had been carried into execution by their actual cancellation and erasure from the rolls and the public records. These taxes being the sole basis of the adjudications to the state, and the Auditor’s deed to Wall of April 27, 1898, being based, as its expressed terms recite, on said adjudications to the state, all having no-other legal purpose or warrant than to collect said taxes, it seems to me that when said taxes were declared null and void by judgment against the state that said adjudications became equally null and void, and that thereafter the Auditor of Public Accounts was absolutely without power or warrant in law to sell the property to Mr. Wall.
“ ‘Sublato fundamento, opus eadit.’
“If the State Auditor had sold the property to Mr. Wall in virtue of said adjudications pri- or to the judgment against the state of November 16, 1891, annulling all the taxes, basing said adjudications, different questions might' arise. Inasmuch as the state had not sold when said judgment was rendered, I think that said adjudications fell, stricken with absolute nullity,, when the taxes on which they were based were declared null and uncollectible.
“Such adjudications are only one step in the-process of collecting taxes. If there be no bidders at the tax sale, the collector adjudicates to-the state. The state continues to assess the property to the owner, and he has the right to redeem. If he fails, the state requires the listing and reolfer for sale of the property still for the collection of the taxes, and at last, if no sale can be made, the state takes the title and the Auditor sells it when enough can be realized to-collect the taxes due upon it. Such are the requirements in general terms of the revenue acts, and particularly of the clearing-up act (Act 80, p. 88, of 1888), as to all taxes due after 1880.
“As the state’s right to collect the taxes assessed against the property herein from 1880 to-1888 had been destroyed by the judgment of November 16, 1891, it seems plain that her power-to sell said- property for said extinct taxes was at an end. If so, the Auditor’s deed of April 27, 1898, to Mr. Wall was ultra vires, and conferred no title, and his title to Judge Marr was a mere nullity. Inasmuch as these semblances or pretenses of the title are clouds upon plaintiff’s title, their inscription on the records should be removed.
“Adjudications to the state for said taxes were-incidents or steps in the process of collecting, and were not absolute and indefeasible titles. As such incident. made so by the general tax statutes of the state, they fell with the extinction of the taxes which they devised and made to collect, and the tax rolls and records in the mortgage office were the proper bureau for full information. The records of that office showed, *243 that on April 27, Í898, when Mr. Wall took the Auditor’s title, all taxes due on this property by Vaughn from 1880 to 1888 had been extinguished, and erased by the judgment against the state November 16, 1891.
“My conclusion is that the act of the Auditor in executing the deed of sale to Mr. Wall on April 27, 1898, was ultra vires, and conveyed no right or title-to the property. In re Seim, 111 La. 555-556, 35 South. 744.”
Opinion.
Before passing to various' other questions involved in this case, we direct our attention primarily to the one on which the district judge based his judgment of court of November 16, 1891, decreeing that the taxes on the properties up to 1888 prescribed and ordering their erasure. If the state had at that time occupied the position of a quasi creditor of Vaughn with taxes and tax privileges then existing, or alleged to be then .existing, on those properties which would require future proceedings against the same for their enforcement, the judgment in the rule could have been successfully invoked against the tax collector who would have had recourse to such proceedings, but in the present instance matters had reached a point where such action was not, and would not be, needed. The properties had already been sold at the tax sale in 1885, made by Cave-nae, tax collector, and the legal title of the properties had already been placed in the name of the state. Whatever may have been the intent as to the ultimate purpose of the state in faking the legal title of the property, that fact had as its legal result the doing away of any proceedings to enforce payment of the taxes thereon by sales. The taxes quoad the state were extinguished as to the owner under the circumstances, but not by and through prescription. Prescription after the sale would not enter as a factor in determining what the relative rights of the state, and those of Vaughn or the bank might be. When, therefore, several years after such a sale had been made the bank raised an issue whether prescription had run upon the property or not, it raised a totally irrelevant and improper issue, one which the state had no interest to contest. It would have been interested only in the event that its title to the property, through the tax sale, had been contested. No such attack on its title was made by the bank. It did not claim then, nor does it claim now, that, when the adjudications to the state were made through the Oavenae sales, the particular taxes in enforcement of which the sales were made were then prescribed. Questions as to future taxes on the state’s own property were matters which did not arise out of the situation. In dealing with matters'as they existed at the date of the rule, the bank overlooked the fact that the state had held the legal title to the properties on which the bank had had a mortgage ever, since September, 1885, and that through that very sale the bank’s own mortgage had been cut off, and extinguished, if the adjudication was a valid one as the rights of the state would have primed the rights of the bank. Augusti v. Citizens’ Bank, 46 La. Ann. 529, 15 South. 74.
We cannot give to the judgment on the rule the force and effect given to it by the trial judge.
The first attack made by the bank upon the adjudications to the state was that made by it in the suit reported in 111 La. 601, 35 South. 780, which was one brought on the 31st of October, 1901, to remove the inscriptions of those titles as clouds upon its own title, in which that issue was ' raised, and sought to be determined not contradictorily, with the state, but with Wall, who claimed title under the Auditor’s conventional act of transfer; and Marr, the vendee of Wall. The state officials took no steps (after the adjudication of the properties to the state in 1885 under the tax sales made by Cavenac, state tax collector), towards placing the state in possession of the property adjudicated to it. They obviously considered that the rights of the state had become fixed by the adjudica *245 tions themselves, and there was no necessity of following up the same by taking possession in any way. They allowed matters to drift in the condition the adjudications had placed them.
The bank obviously took a different view of the situation. It held that the state, having recognized Daniel Vaughn as the owner, assessed taxes upon it as his, and proceeded against it as his, necessarily recognized at the same time that he held the constructive possession of those properties which was linked to the fact of such ownership; that, tax proceedings not being accompanied by a seizure, left the owner’s possession undisturbed and intact, and that, in order to oust Vaughn absolutely from his ownership and constructive possession, it was necessary that the state should have followed up the adjudication by some step placing the state in possession ; that the statutes required this to be done in order to give to property owners a final notice and warning that their property had been sold and afford them, when steps should be taken to placing the state in possession an opportunity to attack the adjudications and vindicate their rights if any they had. The bank, notwithstanding the adjudication, moved forward in execution of its special mortgage, evidently upon the theory that, holding relations of privity with Vaughn in respect to the property subject to the mortgage, it had the right to avail itself of every right in the premises which Vaughn himself had, and that it was authorized to proceed against Vaughn and the property up to the time that he had himself finally lost all legal connection with it. It therefore proceeded by executory process and under the proceedings bought in the property, and claiming that by virtue of such acquired ownership it had become subrogated to all rights which Vaughn had; among others, to the right which he still held of holding constructive possession, and being afforded a legal opportunity to contest the adjudications to the state and vindicate Vaughn’s rights and its own until some proceeding should have been taken by the state to obtain possession; that, until such step had been taken matters remained inchoate in the condition in which they were at the date of the adjudications. It denies that Wall has ever been placed in possession, or that from a legal standpoint he is to be considered in possession of the property. It claims that the property being at the time he undertook to take possession in custodia legis in favor of the bank, no possession'could be given legally by the sheriff to the prejudice of the rights of the bank under its seizure. It denies that any proceedings were taken By Wall contradictorily with it, or any one else to be placed in possession, and in its pleadings it insists that legally the property is still in the possession of the sheriff. It insists that, the state not having taken possession itself under the adjudication, the Auditor was legally unable to convey to Wall a possession which the state did not have itself, and, if Wall acquired any rights at all under the transfer from the Auditor which it denies he did, he could acquire at utmost the rights of the state under the adjudication, coupled with the obligation to take legal steps to acquire possession, and, in so doing, afford it an opportunity to contest the adjudications to the state and vindicate the rights of Vaughn and of itself through and under Vaughn’s rights. It claims, however, that the legal situation was not such when the Auditor transferred the property to Wall as to-have given him, under any authority so to do under Act No. 80, p. 88, of 1888; that at none of the tax adjudications referred to by the Auditor as furnishing him with the authority to sell the property to Wall had the properties ever been sold as property which had already been adjudicated to the state; that the adjudications made by Bouny and by Cavenac were proceedings taken directly against the parties alleged to be the owners of the proper *247 ties, and in whose names they had been assessed, and in direct, primary enforcement of current taxes; that these adjudications were, besides this, null and void and subject to attack, and it had the right to attack them.
Defendants insist that they are entitled to the benefit of the prescription of three years provided for in article 233 of the Constitution; that not only has the act to Wall been of record for three years after the Constitution of 1898, but so also had the tax adjudications made to the state by Bouny and Cave-nac by which the title of the bank’s debtor Vaughn had been divested; that not only had the acts been of record, but the purchaser had been in actual possession of the property for over three years, and the bank had been given thereby full notice of adverse claim and possession. They further claim that the bank has no legal interest to question the authority of the Auditor and the legality of his acts as its claims, and that of Vaughn had been cut off by the adjudication, and the acts of the Auditor were matters exclusively between the state and the Auditor and those claiming to hold under the latter.
The properties involved in this litigation were properly assessed in 1884 in the name of Daniel Vaughn, as he was beyond dispute the owner thereof at that time. They were sent to tax sale properly in his name and adjudicated to the state, and such act of adjudication was duly and properly recorded in the conveyance office in April, 1886. Those properties have been chargeable with their pro rata share of contribution towards the governmental purposes ever since, but neither Vaughn, the owner, nor the bank, which held a special mortgage on them, have paid, nor has either offered to pay, a cent of taxes upon them during that long period. Vaughn has evidently long since abandoned the properties. During the long period since 1886 the bank made no move in the direction of attacking the adjudications to the state. It now seeks collaterally in an action to remove a cloud upon its title to be recognized as the owner of the property, and to be placed in possession of the same without paying, or offering to pay, a cent of taxes upon it. It ignores entirely the rights of the state, and, if successful in this case, it will have acquired by disregarding its duty to it a position greatly more advantageous than that held by citizens who through these years have paid regularly their taxes. The bank was in position before and has been ever since 1885 to have avoided the prejudicial effect to it of a sale of the properties to the state at a very, small expense, but it did not think proper to avail itself of its opportunity to do so. In 1891, instead of seeking to avoid the payment of the taxes on the property by urging as it did their prescription, it should have paid them. The Auditor would doubtless have transferred the property to the bank at that time as readily as it did afterwards to Wall. The adjudication to the state of its debtor’s property has been of record in the conveyance office for the parish of Orleans ever since July, 1885. We think it is now too late for the bank, and under the circumstances of this case, to successfully set aside the adjudications to the state made in 1885.
Eor the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment of the district court be, and the same is hereby, annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that plaintiff’s demand be, and the same is, hereby rejected, and its suit dismissed, with costs in both courts.