(47 South. 683.)

No. 17,167.

WEBSTER et al. v. HOWCOTT et al.

(Nov. 16, 1908.   Rehearing Denied Dec. 14, 1908.)

1. APPEAL AND ERROR (§ 1008*)—REVIEW—QUESTIONS OF FACT.
   With the burden of proof and the judgment of the trial court against the plaintiffs on an issue of fact, the decree will be affirmed, unless manifestly erroneous on the face of the record.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3955; Dec. Dig. § 1008.*]

2. TAXATION (§ 604*)—TAX SALE—CANCELLATION.
   After property has been adjudicated to the state for taxes, proceedings by rule against the tax collector alone will not lie to cancel such taxes. Bank v. Marr, 120 La. 236, 45 South. 115, reaffirmed.
   [Ed. Note.—For other cases, see Taxation, Dec. Dig. § 604.*]

(Syllabus by the Court.)

Provosty, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by Taylor Webster and others against W. H. Howcott and the Aztec Land Company, Limited. Judgment for defendants, and plaintiffs appeal. Affirmed.

Theodore Atchison, for appellants. Robert Hardin Marr, Jules Blanc Monroe, and Benjamin Rice Forman, for appellees.

LAND, J. The plaintiffs in this suit are Taylor Webster and Jane Webster, heirs of Daniel Webster, who died in the city of New Orleans in January, 1884. Plaintiffs are also heirs of Susan, wife of Daniel Webster, who died some time prior to the year 1895.

Daniel Webster at the time of his death owned two squares of ground of but little value located in the rear portion of the city of New Orleans. In 1884 these squares were assessed in the name of Daniel Webster for state taxation at a valuation of $200 each, and were adjudicated to the state of Louisiana in 1885. The formal deeds to the state were recorded in 1886. On June 1, 1897, both of the squares were sold by the State Auditor to W. H. Howcott for $33 each, representing the taxes and costs due the state from 1884 to 1896, inclusive. The purchaser took actual possession of the property, and in 1902 conveyed it to the Aztec Land Company without warranty, and with such title only as he had acquired by the tax purchases.

This suit was brought in November, 1904,

to annul the said adjudications to the state of Louisiana on the grounds that the assessment of 1884 was made in the name of Daniel Webster after his death, and that no notice was given to his legal representatives.

The petition further alleges that on or about November 27, 1896, W. H. Howcott, acting as the representative of petitioners, employed and retained counsel to secure the cancellation and erasure of certain taxes, tax liens, and privileges standing against said property, and caused a certain suit to be filed in the First city court of New Orleans, entitled No. 33,308, which was prosecuted to judgment rendered on July 29, 1897, ordering that the taxes, liens, and privileges be canceled and erased as prayed for.

The petition further charges that the said Howcott during the pendency of said suit, and while acting as their agent, purchased said property from the state, and in so doing acted in bad faith and in fraud of the rights of petitioners.

The petition further charges that the subsequent sale of the property from Howcott to the Aztec Land Company was the result of a fraudulent conspiracy between them to deprive petitioners of their rights.

Petitioners prayed for judgment recognizing them as the true and lawful owners of the property, and declaring the titles of the defendants absolutely null and void, removing the same as a cloud on petitioners' title, or, in the alternative, for judgment against the defendant Howcott for the value of the property at date of the institution of the suit.

The defendants answered, pleading the general issue, and then set forth their chain of title to the property, their actual possession thereof since June 1, 1897, and pleaded the prescription of 3, 5, 10, and 30 years.

Defendant Howcott specially denied in detail the fiduciary relationship and acts alleged in the petition.

There was judgment in favor of the defendants, and the plaintiffs have appealed.

The alleged nullities in the tax adjudications and sales have long since been cured by the constitutional prescription of three years, as the evidence shows actual possession in Howcott and his vendee since 1897. Plaintiffs never had possession of the property.

As the evidence shows that the Aztec Land Company purchased from Howcott, the owner of record, and does not show that said company had any notice of the alleged fiduciary relations existing between Howcott and plaintiffs, it is obvious that the title of the Aztec Land Company cannot be disturbed.

The only remaining question is the right of the plaintiffs to recover the value of the property from the defendant Howcott as an unfaithful agent who had betrayed his trust.

On this issue there was judgment below in favor of the defendant Howcott; and, as the evidence is conflicting, the findings of the trial judge should not be disturbed unless clearly erroneous.

Plaintiffs attempted to show by B. A. Flanders that W. H. Howcott in 1895 or 1896 agreed to act as agent for the plaintiffs in clearing the property from taxes. The Webster heirs lived in Galveston, Tex. Flanders had no power of attorney from them, but at their verbal request undertook to look after their property interests in New Orleans. No state or city taxes had been paid on the property since 1883. Flanders in 1895 or 1896 consulted Howcott, giving him a description of the property, and the names and post-office address of the three heirs then living in Galveston, Tex. Flanders testified that he had a number of interviews with Howcott on the subject, and that Howcott made a proposition to purchase the property from the Webster heirs. This proposition was declined. There is nothing in Flanders' testimony to show that Howcott ever agreed to act as agent for the plaintiffs in clearing the property of taxes. There was no talk between them of money for paying taxes, expenses of law suits, compensation of Howcott, or for

any other purpose. According to Flanders' testimony, Howcott from time to time postponed the consideration of the subject for various reasons. The most that Flanders could write the Websters was that he presumed that Howcott would take up the matter. We make the following extract from Flanders' testimony in rebuttal:

"We talked about it every time we met, as I remember, and, of course, as he could not buy it, it seemed to be somewhat of a disappointment to him, but he never talked as though he was disinclined to clear the title of all taxes claimed."

Howcott testified that he made no agreement with Flanders on the subject, and that after his proposition to purchase the property was declined, the matter ended as far as he was concerned. Flanders' testimony per se is insufficient to show that Howcott ever agreed to play the role of a gratuitous mandatary for the nonresident Websters, who were strangers to him.

When it is considered that the taxes on the property could be cleared only by payment or as the result of litigation, it is highly improbable that any sensible man would have undertaken any such mandate without a specific contract securing his advances and compensation.

The theory of plaintiff's demand against the defendant Howcott is that he not only accepted such a mandate from nonresident strangers, but actually employed counsel, advanced costs, and prosecuted suits in their behalf.

The story is improbable on its face, and its unreasonableness must be considered in weighing the evidence relative to the participation of Howcott in the litigation which was instituted in the year 1896 to cancel certain taxes on the property.

It appears from the notes of evidence and the testimony of Mr. Watt that the firm of Watt & Wall instituted a suit on September 23, 1896, in behalf of Mrs. Susan Webster et al. against the state tax collector alone to cancel all state taxes on the property from 1884 to 1896, inclusive, and that on October 24, 1896, judgment was rendered canceling such taxes. This judgment was never recorded nor executed, and was a mere nullity; the state having acquired the property. Bank v. Marr, 120 La. 236, 45 South. 115. Though offered in evidence, the record and judgment in said suit does not appear in the transcript. This particular suit was filed by Mr. Watt.

On November 27, 1896, Mr. Wall, of the firm of Watt & Wall, instituted a suit in the name of Mrs. Susan Webster et al. and against the city of New Orleans to cancel city taxes prior to the year 1890. Judgment of cancellation was rendered and signed on July 29, 1897.

After the judgment became executory, Mr. Wall had the taxes canceled on the city records, and presented a bill for fees and costs to Mr. Howcott, who refused to pay the same on the ground that he had never employed either Mr. Watt or Mr. Wall to bring the suit. Mr. Wall knew of no such employment, having instituted the suit at the instance of Mr. Watt. Mr. Wall testified that to the best of his recollection he wrote to the Websters, but received no reply. What he wrote about the witness does not say.

The testimony of Mr. Watt on his first examination was vague and uncertain. He testified merely to impressions and beliefs which he was not willing to swear to after the lapse of 10 years. He could not recollect which of the two suits he had brought. After Mr. Howcott had testified that he had never employed Mr. Watt to clear the property of taxes, and knew nothing about either suit until Mr. Wall presented him a bill for fees and costs some time after July, 1897, Mr. Watt took the stand and testified positively that he was employed by Howcott to clear the property of taxes. He admits that, to the best of his recollection, he did not present

any bill for his services to Mr. Howcott. No contemporaneous entry or memorandum or other writing was produced to corroborate the testimony of Mr. Watt as to this alleged verbal retainer in 1896.

Considering both witnesses to be of equal credit, the burden of proof was on the plaintiffs. Moreover, in cases of this kind great weight is justly attached to the opinion of the trial judge, who saw and heard the witnesses. With the burden of proof and the judgment of the lower court against them on this issue of fact, it must be held that the plaintiffs have failed to make out their case with reasonable certainty.

Judgment affirmed.

PROVOSTY, J., dissents.