Statement of the Case.
NICHOLLS, J.
The plaintiff alleged that the defendant was indebted to him in the sum of $15,000, with interest, for this, to wit:
That on September 10, 1907, between the hours of 8 and 8:30 p. m., your petitioner boarded a street car operated by defendant, No. 002 of the Daupliine line, at the corner of Bourbon and Canal streets, in this city, and paid his fare of five cents for the purpose of conveying petitioner to his destination downtown. That petitioner tools a seat inside of said car, and when said car reached Rampart street, between St. Louis and Conti streets, without any notice or warning, and whilst petitioner was seated inside of said car, he was violently hurled from his seat and precipitated to the floor of said car. That he was thereby rendered unconscious, not regaining consciousness until he was brought to the drug store at the corner of St. Louis and Rampart streets, when the Charity Hospital ambulance was telephoned for, and into which said ambulance petitioner was placed by the hospital doctors and carried to the Charity Hospital for attention, where his wounds were dressed. That from the direct effects of said accident petitioner has suffered, and will continue to suffer for the balance of his life, painful and permanent injuries, consisting of a broken arm, broken and fractured at or near the elbow, and lacerations of flesh and wounds of the left forearm and the left index finger. That the place where said accident occurred is, and was to the knowledge of defendant, its agents, and employes a dangerous place, the danger of said place not having been previously known by or notified to petitioner. That on Rampart street, and where said accident occurred, there are two tracks — to the righthand side of the street a single track, where cars move downtown from Canal street; towards the Barracks, and to the left side of said street, a single track, where cars move uptown from the Barracks and Esplanade street towards Canal street. That said tracks are, and have been for more than a year, and particularly at the point where said accident occurred, between ■St. Louis and Conti streets, and to the knowledge of said defendant, entirely out of line and plumb, unsafe for street cars to pass each other, and in a dangerous condition. That at the time of said accident, and as street car 062 of the Daupliine line, in which said petitioner was seated, and whilst said car was going and moving in the direction of downtown, street car No. 61 of said Dauphine line was coming uptown on the adjacent track, and in the direction towards Canal street. That by reason of the dangerous condition of said tracks and the close proximity of the same, and because of the length and width of said car and the swerving of said cars, caused by said tracks and by the negligent manner in which said cars were handled by defendant’s employes and by the defective apparatus of said cars, all of which was specially known by said defendant as above stated, said cars, moving_ at a high and dangerous rate of speed, collided sideways with terrific force. That from the effects of said collision petitioner was knocked out of his seat and rendered unconscious, and suffered permanent and painful injuries as above detailed. That about one year ago a similar accident took place to another party, whose name is now unknown to petitioner. That defendant then was made aware of the danger, and knew of it; but, notwithstanding said knowledge, it failed to provide against a recurrence of said accident to other parties and especially to petitioner.
Now petitioner avers: That his occupation is that of a traveling salesman on commission on the sale of men’s and children’s clothing. That according to the custom of the trade in which he is engaged it is necessary for him to carry it on most particularly and especially during the autumn season; that is to say, during the months of September, October, and November of each year, and for the year 1007. That if he is unable to makes sales during said time, he thereby loses not only his compensation for his services, but his trade and customers are lost to him and are compelled to purchase their goods from other parties. And petitioner avers that the aforesaid injuries to his arm had confined him to his home, prevented him, and continues to prevent him, from carrying on his business during the busy season, and the months above stated, of this year, thereby causing him great pecuniary loss and the permanent loss of his customers. 'He further avers that the use of said arm is necessary to the conduct of his said business, and that it will be impossible to use said arm hereafter. That because of the foregoing injuries he has suffered damage in the following amounts:
(1) For physical pain, suffering, mental anguish, and being rendered unconscious by said accident, lacerations, wounds, and broken arm, $5,000; for permanent injuries to his said arm, *201 §5,000; for medical attention, physician, medicines, nursing, etc., §500; for loss of trade and customers, §2,000; for punitory damages and exemplary damages against defendant for running its cars on the tracks in a dangerous condition, the said defendant well knowing said tracks and the operations of its cars thereon at said place to be dangerous and unsafe, §2,500-aggregating in all the sum of $15,000.
Now petitioner avers that said injury and damage were directly caused by the gross, criminal, and willful acts and negligence of said defendant,. its agent and employes; that said defendant was grossly and criminally negligent in maintaining said tracks and said cars in a dangerous and unsafe condition, and, were it not for_ the said negligence of said defendant, the accident herein complained of would never have happened; that said accident occurred through the gross fault and. negligence of said defendant, its servants and agents, the defective apparatus of said ears, and the defective appurtenances thereof, and the defective condition and character of said tracks; that petitioner was free from negligence ; that he could not have guarded against or avoided said accident; that the acts and doings of defendant aforesaid violated the contract of carriage, and caused petitioner damages as above itemized, and irreparable injury from depriving _ petitioner of the free use and ■enjoyment of his arm for the remainder of his life. Amicable demand has been made without avail. In view of the premises, .petitioner prays that defendant, the New Orleans Railways & Light Company, through its proper officer, be cited to appear and answer this petition, and after due proceedings had there be judgment in petitioner’s favor against defendant for the sum of fifteen thousand (§15,000) dollars, with legal interest from date of judgment, and all costs; and petitioner prays for trial by jury and for general and equitable relief.
Defendant answered. After pleading a general denial, it averred that it was not responsible for the injuries alleged to have been received by the plaintiff, for the reason that he alone was to blame for the accident, because, at the time of said accident, he had thrust his arm, or some portion thereof, through the bars guarding the said window, placed there for the purpose of preventing passengers from putting their arms out of the window of the ear, and that the accident therefore occurred through no fault, negligence, or neglect of the defendant company, its agents or employes.
In view of. the, premises, respondent prayed that plaintiff’s demand be denied and rejected, at his costs, and for all general and equitable relief.
The issues were tried before a jury, which returned a verdict in favor of defendant. The plaintiff moved for a new trial on the grounds:
(1) That said verdict and judgment is contrary to the law and the evidence.
(2) The court erred in charging the jury that, when a passenger is injured, the burden of proof is not upon the defendant carrier to show that the injury or accident was due to inevitable accident beyond its control, and that it was not necessary for defendant to show that it had exercised all care and prudence and foresight in the construction of its tracks, or in keeping them in good order, or that its cars were properly equipped and safely constructed, and that all obstructions near its tracks, which might endanger the passenger, were removed.
(3) The court erred in charging the jury that when the railroad company had constructed bars or screens for the window of its cars, as protection to the passenger, it was not necessary that said company should use extraordinary care in the arrangement and construction and the utmost skill, so that there would be no possibility of injury to the passenger either by obstructions or passing cars.
(4) The court erred in holding that the plaintiff sustained the burden of proof to show that the accident occurred through the fault and negligence of the defendant, and that the defense of contributory negligence, specially set up by defendant in its answer", admits its negligence, and that plaintiff contributed to the accident by putting his arm outside the window, did not shift the burden of proof upon the defendant.
The court overruled the application, assigning the following written reasons for his ruling:
“The jury were the judges of the fact, and 1 am not prepared to overrule their finding, or to express an opinion at this time, one way or another, as to the facts.
“No exceptions were reserved to the charge delivered to the jury; but I wish to say that I did not charge the jury in general terms, as stated in the motion, but in accordance with the law as to the duty of carriers of passengers for .hire, and as to the duty of passengers so carried while on the car, and as to the liability of the carrier for negligence, and as to the doctrine of contributory negligence as affecting the passenger’s right to recover. The charge was delivered orally to the jury in presence of counsel, "and there was no request dr modification of it, in whole or in part, and no expression of dissatisfaction with it,, in any measure. Nor was any bill df exception reserved tó it'as a whole, or to any part of it. I cannot go into details *203 as to wherein the charges of error, in plaintiff’s motion are incorrect, and I regret that counsel, if dissatisfied, did not request modification or explanation, and specially that he did not reserve bills of exception. -
' I think the trial a fair one, and as the record is complete, and the appellate court will have all the facts'before them, I see no reason why I should express my approval or disapproval of the verdict, nor why a new trial should be granted. Motion dismissed, and a new trial refused.”
The court •then rendered judgment in conformity with the verdict.
Plaintiff has appealed.
Opinion.
The plaintiff himself does not really know to what cause must be attributed the injury which he received. It took place suddenly, without warning, and he became unconscious simultaneously with receiving the blow upon his elbow which broke his arm. He alleges, as we have seen, that while, seated as a passenger on one of the cars operated by the defendant company, proceeding from Rampart street, he was violently hurled from his seat and precipitated to the floor; that the place where the accident occurred was, to the knowledge of defendant, a dangerous place; that there were two lines of cars operating on that street; that the tracks had been for more than a year, at the point where tjie accident occurred, entirely out of line and unsafe for street cars to pass each other, and in a dangerous condition; that, when he was so seated in the car, a car passed it going up Rampart street on «parallel tracks; that by reason of the dangerous condition of the tracks and the close proximity of the same, and because of the length and width of said car, and the swerving of said cars caused by said tracks, and by the negligent manner in which said cars were handled by defendant’s employes, and by the defective apparatus of said cars, all of which was known to defendant, said cars, moving at a high and dangerous rate of speed, collided sideways with terrific force; and that from the effect of said collision he was knocked out of his seat, and rendered unconscious, and suffered permanent and painful injuries. We do not find, as a fact, that the cars were running at a high and dangerous rate of speed, nor do we find that the condition of the tracks was such as plaintiff alleged, and that the accident occurred from such a condition of the tracks. We think the petition, in ignorance of the actual facts, was framed so as to include most of the circumstances under which railway accidents usually occur, so as to take advantage of any situation which the evidence adduced on the trial might develop. Pleadings of that character are usual and to be expected, where the proximate cause of the accident is in doubt. This case comes before us on an appeal from the verdict of a jury, and a judgment of court affirming the same, where the issues involved were questions of fact. No objection was made to the charge of the judge, and no complaint is made either as to proper evidence having been excluded or improper evidence allowed to be introduced. All of the evidence permissible was adduced which each party could bring forward. The note of evidence discloses that a great part of the testimony went before the jury illustrated by the witnesses by gestures which cannot be reproduced in the transcript.
As an appellate court we should not reverse the judgment, unless we be authorized to declare that it, and the verdict of the jury upon which it is based, was manifestly wrong. Appellant comes before the court under adverse circumstances. We ourselves cannot say what caused the injury, unless as suggested below. The defendant was evidently not guilty of negligence in respect to taking precautions against passengers from even carelessly protruding their arms out *205 side of the window, for not only were small iron bars placed in the upper part of the windows, and across them, but at the bottom of the same wire netting was stretched across, which prevented passengers from exposing their arms, unless by assuming positions entirely unusual and unsafe, causing them to protrude above the wire netting.
Rampart street is made up of a middle space, which is known as the “neutral ground,” having a street on each side running parallel to the same. The neutral ground has trees upon it outside of the tracks. The city council, in granting a franchise to the defendant to run a double track along the neutral ground, was necessarily limited as to the distance between the parallel tracks by the width of the neutral ground; and while there was more or less danger from allowing the tracks to be placed as close as they were, that body, in the exercise of its discretion and in the interest of public convenience, thought proper to grant the privilege. The defendant had no control over that matter. It accepted the privilege, and so far as we are advised it has guarded the public safety as well as it could under existing conditions. Passengers owe something to themselves for their own protection, and must yield something for the public good. No good purpose would be subserved by reciting the testimony in this particular case. The court considers the preponderance of testimony as leading to the conclusion that plaintiff permitted his elbow to protrude out of the window above the wire screen to an extent sufficient to have had it struck by something on the outside of the car. Precisely by what it was struck is not directly established, but presumptively it was by the passing ear. The accident to the plaintiff is greatly to be regretted, but we have no alternative but to affirm the judgment. It is hereby affirmed.