BREAUX, C. J.
This is an action sounding in damages on the ground that defendant violated its contract.
The contract is dated the- 12th day of October, 1908, in which defendant agreed and contracted with plaintiff to cut all of the stumpage owned -by defendant on certain lands.
The following is a copy of the contract:
“State of Louisiana, parish of Calcasieu: Be it known that this contract, made and entered into this 12th day of October, A. D. 1908, by and between Louisiana Manufacturing & Mercantile Co., Ltd., party of the first part, and J. P. McMillian, party of the second part, witness that said party of the first part agrees to and contracts with party of the second part to cut into lumber, thoroughly smoke, dry and deliver to party of the first part’s planing mill at Hall City, La., all of the stumpage said party of the first part now owns in section seven (7) and eighteen (18) township three (3) south, range eleven west, La. Her., and any stumpage that party of the first part may obtain near said sections. Said lumber to be cut full as to widths, and thickness to cover loss from shrinkage. Said lumber to be checked up as delivered, and to be paid for monthly as delivered, at the price of six and 50/ioo ($6.50) per thousand feet on the first of each month. Said party of the second part agrees to build and to have in operation a sawmill of not less than ten thousand feet capacity within ninety days from date hereof, said mill to be located on site designated by party of the first part. Said sawmill to be used to cut the stumpage before mentioned. No Dills to be furnished for lumber less than one inch in thickness, otherwise lumber to be cut according to bills furnished by the company. The party of the first part agrees to furnish the material for building the necessary rent houses for the laborers that work at said sawmill, and party of the second part agrees to build houses, party of the first part to receive all rents from same.”
The defendant denies all indebtedness to plaintiff, and denies particularly that the contract would have netted to plaintiff $2.75 per thousand feet, as it was to him a losing contract.
The defendant company further states in its defense that the contract was annulled and defendant released from all obligations.
The defendant’s contention, urged in the alternative, is that plaintiff defaulted in failing to build and have in operation a sawmill of not.less than 10,000 feet per day capacity within the said 90 days; that he further failed to properly dry the lumber cut from the logs it delivered to him; that he failed to properly cut the lumber, and, in trimming the lumber, he had no cut saw in his mill although it was agreed verbally that he would install a cut saw therein; that he failed to deliver the lumber manufactured.
Tüie -defendant reconvened and claimed $200.84, for which it asked for judgment in recoiivention.
■ The defendant filed a supplemental answer in which it alleged with more detail the asserted annulment of the contract, and pleaded that plaintiff was concluded by his acquiescence.
Plaintiff’s demand was rejected, and the amount claimed by defendant in reconvention was allowed.
Plaintiff appeals.
Among the defenses defendant pleaded that plaintiff was estopped by reason of the defendant company advising with plaintiff in regard to the contract in question and of his advising as best to abrogate the contract; that plaintiff is a stockholder of the defendant company, and that he is bound by his conduct and acquiescence in matter of this contract.
*857 Of this later.
On the other hand, plaintiff by motion asked the court to appoint two experts to examine the lumber which he had manufactured for the defendant under the contract.
The motion was overruled.
Plaintiff, after judgment had been rendered against him, filed a motion for a new trial, in which he averred that his mill was of the capacity required by the contract. Furthermore, that an inferior grade of lumber was, as we understand, purposely placed before the witnesses as lumber which plaintiff had manufactured, although it was not lumber of plaintiff’s manufacture. The latter was good lumber, and the former was very inferior.
The motion for a new trial was overruled.
During six days the trial was heard in the district court. On the morning of the fifth day the plaintiff asked the court to appoint, as before stated, two lumber graders as experts to repair to plaintiff’s mill, and after examination make a return about the quality of the lumber manufactured by plaintiff for defendant.
The district judge refused the application.
The town of Merryville, we infer, is at some distance from the parish seat. It is at or near that town that the sawmill is situated. The court evidently did not consider that there was necessity for other expenses and delays after the days of trial.
Having read the testimony, we are not of opinion that he erred. It was ample to prove all the material facts. The report of two graders would not have changed the result.
A number of witnesses testified, some of them graders and others experienced lumber manufacturers. They had seen the lumber when it was being manufactured and after it had been manufactured.
As to experts we conclude:
It does not require a board of experts to grade lumber. The grade can be shown by the evidence of witnesses. Experts may be appointed when the court deems it necessary. Code of Practice, art. 442.
The trial judge in directing the trial is vested with some discretion, and unless it appears that he has greatly erred in declining to appoint experts his ruling will not be disturbed.
We are informed by the contract that the plaintiff was to saw defendant’s logs at his mill for $6.50 per thousand, and deliver them for use at defendant’s planing mill.
One of the complaints of plaintiff is that the delay with which he is charged by defendant was caused by delay on defendant’s part in delivering the logs to be sawed at the mill.
The testimony on the subject is conflicting. It does not satisfactorily appear that plaintiff reminded the defendant of its duties as contracting party to promptly deliver the logs if the defendant company desired prompt delivery of the lumber. There is evidence that the logs were delivered promptly and that there was very little delay. The weight of the evidence, it seems, was with the defendant upon this point.
With reference to the sawmill: We are informed that it was a small size circular sawmill.
The contract provided for a mill of 10,000 feet per day. Instead of 10,000 feet, the evidence shows that its capacity was less than 8,000.
From the contract we infer that it was to be 10,000 board measure and not log measure, as contended by plaintiff. But even if the contract be construed as having provided fox a mill of 10,000 capacity log measure, the difference between log measure and board measure would not make the mill equal to 10,000 capacity. The difference is 15 per cent, or less. That percentage on about 7,- *859 000 feet log measure would, not be equal to 10,000 feet board measure.
Besides, there is testimony that the difference was not as great as 15 per cent.
The difference in the number of feet of lumber was of moment to the defendant. The planing mill, for the operation of which the contract was entered into, realized considerably less because of the limited capacity of plaintiff’s mill.
Plaintiff complains because defendant did not offer in evidence its logbooks to prove the capacity of the mill, his contention being that by the logbooks it would have proven a capacity within a few feet.
The fact in this regard, is that there was no objection raised on the ground that the defendant had failed to offer its logbooks in evidence. Other testimony was offered to prove the deficiency in the capacity of the mill. It was heard, and the weight was against plaintiff on that score. It follows that there was no error committed of which he can now be heard to complain.
The testimony not only showed that the mill was not of required capacity under the contract, but that it was poorly constructed, and that the lumber was inferior and not such as the defendant had the right to expect under the terms of the contract.
It would be different if the plaintiff had called for the logbooks and defendant had found some way not to produce them, or if objection had been made to the admissibility of other testimony until they had been produced in court.
We pass to the question of the amount claimed as damages.
If all the grounds were sustained by sufficient proof, the amount claimed for damages is not sustained. It is fictitious and speculative.
Plaintiff assumed that his nét profit would have been $1.88 per thousand feet, and that the million feet of stumpage controlled by him, he avers, would have given him a handsome net profit.
The net profit is entirely assumed, and there would not be any testimony upon the subject were it not that the defendant sought to sustain the claim by his own testimony.
A person who testifies in his own behalf may sometimes throw light upon a subject; it is generally to be weighed as other testimony.
In a suit for damages, generally no great weight will be given to his uncorroborated testimony.
His testimony in such cases should be directly and sufficiently corroborated to render it reasonably certain that the amount claimed is due as damages.
There is no corroboration in the fact that he was to receive $6.50 a thousand to saw the lumber. This amount does not suggest any particular profit, if any was made.
It is said that Mr. Wingate, the owner of another small mill, after a run of five months made a profit of $1,700.
It cannot be assumed that plaintiff with another mill would have made as large a profit. It cannot be assumed that the person named having realized the profit stated the plaintiff must have realized as much.
Another difficulty in the way of plaintiff’s recovering anything grows out of the fact that unless the large estimate — the round sums claimed by plaintiff are allowed him— there is no lesser sum sustained by the evidence. In other words, leaving out of consideration the high estimate placed by plaintiff on his asserted loss, no other has attempted by his testimony to fix a lesser amount as due.
It follows that from that condition a comparatively large amount must be allowed or nothing.
We cannot bring ourselves to the conclusion that plaintiff is entitled to $4,808 on one *861 of the hypotheses he states, or even to $3,384 on another hypothesis.
The amount claimed is for- actual damages; unless they are made to appear with reasonable certainty they cannot be allowed.
Another serious ground of defense which we consider fatal to plaintiff's claim grows out of his acquiescence and consent to put an end to the-contract, a ground which defendant characterizes as estoppel.
The plaintiff as a witness in his own behalf testified at length and positively denied all consent on his part to put an end to the contract. Statements attributed to him, and of which it was sought to remind him on his cross-examination, he emphatically denied.
He, it may be said, denied too much. He had talked to different persons; some of them were interested, others were not. Under oath they all stated that plaintiff did not insist upon his rights under" the contract; that he closed his mill and was looking forward to a disposition of the property.
When there is a general consensus among witnesses in regard to statements made by one of the parties to the suit, his own unsupported denial cannot be taken as entirely correct, and as refuting all that the witnesses have said in regard to his statements showing consent to end a contract.
The questions are of fact; there is, to say the least, some doubt as to plaintiff’s right to recover.
In such a case the judgment will not be reversed on the facts. Ferringer v. Crowley Oil Mineral Co., 122 La. 441, 47 South. 763.
• There is no reasonable certainty of error in the finding of fact; the judgment will not be annulled. Nissen v. Farquher, 123 La. 192, 48 South. 885,
There is a presumption of sufficiency sustaining the judgment. Ansley v. Stuart, 123 La. 330, 48 South. 953.
There are a number of decisions sustaining the view; the list we insert: Levy v. N. O. Railway & Light Co., 123 La. 198, 48 South. 887; State ex rel. Fleming v. Joyce, 123 La. 631, 49 South. 219; Webster v. Howcott, 122 La. 365, 47 South. 683; Police Jury v. T. & P. R. R., 122 La. 388, 47 South. 692; Thomason v. Kansas City Southern, 122 La. 995, 48 South. 432.
To recapitulate: Where one binds himself to cut 10,000 feet a day, and shows a cut, by the testimony of his own sawyer, of 5,000 or 7,000 feet a day;
Where the plaintiff states, I did not operate long enough to know just the capacity of the mill from our sale, although he had bound himself to furnish a mill of the capacity required by the contract;
When three other witnesses corroborate this testimony as to the capacity of the mill;
When the weight of the testimony shows that the mill was not in good condition and sawed inferior lumber;
When it appears by the testimony of witnesses that there was not room for unloading the logs from the wagons which hauled the logs from the woods to the mill, which necessarily delayed the work of delivering the logs and of the mill;
When it appears that plaintiff has consented to put an end to the contract, and fails to .produce witnesses to sustain an amount claimed as due in damages except his own testimony — damages will not be allowed.
For reasons stated, it is ordered, adjudged, and decreed that the judgment is affirmed.