LAND, J.
The substance of the petition may be stated as follows: On or about November 27, 1906, Mrs. McCabe specially mort *1045 gaged two certain lots of ground in the city of New Orleans, by act before Bobt. J. Maloney, notary, to secure a note in favor of Charles A. Byrne for $2,000, with 8 per cent, interest, and payable one year after date. At the time of the passing of said act Bobt. J. Maloney was the holder of said note. In November, 1908, the Keystone Life Insurance Company, hereinafter styled the Insurance Company, and Mrs. Morris Levy made demands on Mrs. McCabe for the payment of duplicate notes purporting to have been signed by Mrs. McCabe on the date of the execution of the special mortgage passed before Bobert J. Maloney, as aforesaid. Both parties claimed their respective notes to be genuine, and Mrs. McCabe, being unable to determine which was the genuine note, deposited in the registry of the court the sum of $2,000, with interest from November 27, 1907, to the date of the deposit. Mrs. Mc-Cabe cited the defendants, and prayed for judgments canceling said notes and mortgage.
The Insurance Company excepted to the form of the proceeding, and for answer averred that the note held by respondent was signed by Mrs. McCabe, and was secured by mortgage on the real estate described in the petition, as per act of sale before Bobert J. Maloney, notary, ,of date November 27, 1906. Mrs. Morris Levy filed similar pleadings, mutatis mutandis, claiming that she held the only genuine mortgage note identified with said notarial act.
On the first trial judgment was rendered in favor of the Insurance Company, and on the second trial judgment was rendered in favor of Mrs. Morris Levy. The Insurance Company has appealed.
We make the following extract from the opinion of our learned Brother below:
“The only question, then, is, Which is the genuine note?
“From an examination of the two notes, and upon careful study and comparison of their signatures and indorsements with the act of mortgage of November 27, 1906, and' the act of sale of December. 1906, both of which plaintiff signed, and with her three signatures written in open court, my finding is that Mrs. Levy held the note with the genuine signature.
“In the Levy note, when plaintiff began to write ‘Mrs.,’ she put a ‘o’ after the ‘M,’ as if she had started to write ‘McCabe.’ The elevation of the ‘c’ above the line and its distance from the ‘M,’ is almost the same when, by error, she wrote it over ‘Mrs.’ as when she wrote it in her last name ‘McCabe.’ No forger would have left that ‘e’ over the word Mrs.’ Again, in her signatures to the acts and those made in open court, there is no break in the two syllables of her Christian name, Charlotte.
“In the Keystone note this break appears both on the face signature and the indorsement. Other variances appear, notably in the last ‘a’ of the indorsement of the Keystone note, which has an open and not rounded top. Generally in the Keystone note there is evidence of a slow-going or faltering pen, nothing of which appears in the Levy note. No signature of the five conceded genuine signatures — i. e., those in open court and those to the act of sale and mortgage — is exactly the same as any other; but taking the general characteristics of her genuine writing they seem to appear uniformly in the Levy note, and some of them are conspicuously absent in the Keystone note.
“I have no other tests by which to measure, or weigh or judge. The evidence appears to me to preponderate in favor of Mrs. Levy.”
The judge states, in his opinion, that his decision in favor of the Insurance Company on the first trial was based on the erroneous theory that Maloney was the agent of Mrs. McCabe.
Plaintiff testified positively that she signed only one note; and there is nothing in the evidence to show the contrary, beyond the purported signatures on the notes themselves. There is no independent fact or circumstance disclosed by the record that points to either note as a forgery. We agree with the trial judge that the question of the genuineness of the signatures must be determined by a comparison of the genuine signatures of Mrs. McCabe with her purported signatures on the two notes. We have made such comparison, and find the differences recited in the opinion of the trial judge. If such departures from Mrs. McCabe’s usual handwriting be not conclusive evidence of forgery, they are sufficient to sustain the presumption of *1047 the correctness of the judgment rendered below. Burbank v. Barton, 117 La. 262, 41 South. 567; Garig v. Truth Printing Co., 123 La. 895, 49 South. 632; Basile v. Taranto, 124 La. 677, 50 South. 649; McMillian v. Louisiana Mfg. & Mercantile Co., 125 La. 854, 51 South. 1013.
The contention of the Insurance Company is that Mrs. McCabe signed and indorsed both notes. The authentic act of mortgage recites that Mrs. McCabe signed only one note. As shown by a number of cases which have been before us, it was the usual practice of Maloney to get the mortgagor to sign the note or notes called for by the notarial act, and then to forge other notes of the same tenor and date, and to identify them with the act by his notarial paraph.
It is therefore ordered that the judgment below be affirmed, and that the appellant pay costs of appeal.
MONROE, J., dissents.